UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE FERREIRA,

                                Plaintiff,                        Case No. 23-cv-03766

        v.

                                                            **COMPLAINT**

PROPERTY MANAGEMENT GROUP, INC.,
BURNSIDE MEWS ASSOCIATES, L.P.,
STEVE ZERVOUDIS and XIN PAN a/k/a PAN XIN,

                              Defendants.
------------------------------------------------------------X

       Plaintiff JOSE FERREIRA ("Plaintiff" or "Ferreira"), by his attorneys, as and for his complaint against Defendants PROPERTY MANAGEMENT GROUP, INC. ("PMG"), BURNSIDE MEWS ASSOCIATES, L.P. ("BMA"), STEVE ZERVOUDIS ("Zervoudis"), and XIN PAN a/k/a PAN XIN ("Pan") (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

       1. Plaintiff brings this action for unpaid wages, including unpaid minimum wages, overtime compensation and interest thereon, liquidated damages and other penalties, and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

       2. This action further invokes the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141 and Part 142; and NY Labor Law § 215).

       3. At all relevant times, Defendants required Plaintiff to work in excess of forty (40) hours per week without paying him overtime compensation at one and one-half times Plaintiff's regular rate of pay as required by the FLSA and NYLL.

**JURISDICTION AND VENUE**

4. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

5. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Southern District, and this is the judicial district in which the events giving rise to the claims occurred, Plaintiff having performed work for Defendants in Bronx County. Defendants have facilities and employed Plaintiff in this district.

6. This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

**THE PARTIES**

**Plaintiff:**

7. Plaintiff is an adult, natural person who resides in the City of New York, County of Bronx, and State of New York.

8. For approximately twenty (20) years, continuing through in or about October 2021, Plaintiff worked for Defendants as the superintendent of the apartment building located at 1893-1895 Andrews Avenue South, Bronx, New York (the "Building").

**Defendants:**

9. At all relevant times, Defendants were and still are a centrally managed real estate enterprise that owns, controls, and manages apartment buildings in New York City.

**BMA:**

10. Upon information and belief, BMA is a limited partnership organized and existing under the laws of the State of New York.

11. Upon information and belief, BMA maintains its principal place of business at 3154 Albany Crescent, Bronx, New York 10463.

12. At all relevant times, BMA functioned as a centrally managed real estate enterprise that owned and managed low-income, rental apartment buildings in New York City.

13. Upon information and belief, BMA's operations included, *inter alia*, management of the Building.

14. BMA, together with PMG, managed the Building, as well as other buildings.

15. Upon information and belief, BMA owned the Building.

16. In this capacity, BMA jointly exercised control and decision making over the terms and conditions of Plaintiff's employment, including the wage policies and practices that are the subject of this Complaint.

17. Plaintiff's salary was paid by BMA.

**PMG:**

18. Upon information and belief, PMG is a corporation organized and existing under the laws of the State of New York.

19. Upon information and belief, PMG maintains its principal place of business at 3154 Albany Crescent, Bronx, New York 10463.

20. At all relevant times, PMG functioned as a centrally managed real estate enterprise that managed low-income, rental apartment buildings in New York City.

21. Upon information and belief, PMG's responsibilities relating to the Building included, *inter alia*, management of the Building, payroll, human resources, and supervision of Plaintiff.

22. PMG managed the Building, together with other buildings. In this capacity, PMG, together with BMA and BMA's principal, Zervoudis, exercised control and decision making over the terms and conditions of Plaintiff's employment, including the wage policies and practices that are the subject of this Complaint.

23. Upon information and belief, PMG exercised joint decision-making authority regarding the amount of Plaintiff's compensation.

**Zervoudis:**

24. Zervoudis is an adult, natural person who, upon information and belief, resides in Bergen County, New Jersey.

25. Upon information and belief, Zervoudis maintains a principal place of business at 3154 Albany Crescent, Bronx, New York 10463.

26. Upon information and belief, at all relevant times, through development and title-holding companies under his control, Zervoudis acquires, develops, manages and owns real estate, including rental properties in New York City's low-income neighborhoods.

27. Upon information and belief, Zervoudis used the trade name "Burnside Mews" in connection with Zervoudis' investment in and ownership of the Building, as well as other real property, including, *inter alia,* a warehouse in Queens County, New York.

28. Upon information and belief, based on a review of New York City Department of Finance records (ACRIS), Zervoudis executed and acknowledged a deed for the sale of

the Building on October 8, 2021 in his capacity as "President" of "Burnside Mews Associates."

29. Upon information and belief, at all relevant times, Zervoudis was the principal, president and/or most senior officer and manager of BMA, a title-holding entity formed and operated by Zervoudis for the sole purpose of nominally holding title to real properties.

30. Upon information and belief, Zervoudis had managerial and operational control over the financial affairs and personnel policies relating to Plaintiff's employment at the Building.

31. Zervoudis jointly supervised Plaintiff and determined Plaintiff's schedule, duties and rates of pay.

**Pan:**

32. Pan is an adult, natural person, who upon information and belief, resides in New York County, New York.

33. Pan is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

34. Upon information and belief, Pan managed the buildings where Plaintiff performed work.

35. Upon information and belief, Pan jointly determined the wages and compensation of the employees of Defendants, including Plaintiff, maintained payroll records, and had the authority to hire and fire employees.

36. Based on information provided by title-owners and employees of properties managed by PMG, Pan determined the amount of wages paid to superintendents of buildings managed by PMG, and was the supervisor/manager at PMG who made wage-related decisions relating to superintendents.

## FACTUAL ALLEGATIONS

37. At all relevant times, Defendants were employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

38. In performing his routine job duties, Plaintiff was called upon to install refrigerators, carbon monoxide detectors, door locks, window guards, and other items at the Building, all of which, upon information and belief, had been moved in interstate commerce. Handling and installing such items and similar items were integral to Plaintiff's duties, and were essential and pervasive aspects of Defendants' business operations.

39. At all relevant times, Defendants jointly employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

40. At all relevant times, Defendants jointly employed Plaintiff within the meaning of the NYLL, §§ 2 and 651.

41. Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

### *Defendants as Joint Employers*

42. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

43. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

44. Defendants jointly employed Plaintiff and were Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

45. Defendants jointly had the power to hire and fire Plaintiff and set Plaintiff's work schedule and conditions of employment.

46. Zervoudis and PMG's managers jointly supervised and delegated work to Plaintiff.

47. Upon information and belief, PMG's managerial responsibilities at the Building included, *inter alia,* hiring, supervising and discharging workers at the Building.

48. PMG's managers and supervisors, including Jose Vargas ("Vargas") and, later, Ramon Bonilla ("Bonilla") supervised and assigned tasks to Plaintiff.

49. When he was hired, Plaintiff interviewed with Vargas, a manager of PMG.

50. Upon information and belief, PMG's manager, Bonilla, was designated an "officer" of the Building's owner in the Defendants' Property Owner Registration that Defendants filed with the New York City Department of Housing Preservation and Development ("HPD").

### *Plaintiff's Employment with Defendants*

51. Defendants have knowingly engaged in unlawful business practices by requiring Plaintiff to work overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying weekly sums that resulted in effective hourly rates below New York minimum wage; and failing to provide wage notices and accurate wage statements required by NYLL.

52. Throughout his employment with Defendants, Plaintiff's duties included, *inter alia*: taking out and sorting garbage and recyclables; sweeping and mopping; cleaning exterior areas in the back and front of the Building; repairing walls and ceilings; and countless similar tasks to maintain, repair and clean all areas of the Building.

53. The Building has approximately sixty-eight (68) apartments and two commercial units. Plaintiff was responsible for maintenance, repairs and cleaning, without the assistance of a porter.

54. Plaintiff was required to be on-call to address emergent issues as they arose.

55. Plaintiff regularly worked seven days per week, typically as follows: from Monday through Friday, from approximately 6:00 a.m. to 5:00 p.m. ; on Saturdays, from approximately 6:00 a.m. to approximately 2:00 p.m.,; and on Sundays, three hours at varying times of the day to handle garbage and recycling.  Factoring in 1 hour of lunch from Monday through Saturday, Plaintiff worked 60 hours of work per week, not including on-call time.

56. In addition to the foregoing, regular work schedule, at all relevant times, Plaintiff was required to remain on call from early morning through late at night, to perform emergent tasks, such as snow removal; facilitating building access for emergency responders and tenants who misplaced keys; fixing leaks; and handling tenant requests.

57. Solely by way of example, on a Sunday evening during the summer of 2021, Plaintiff was alerted to an emergency at the Building that caused water to leak into Apartment 2B.  Plaintiff was required to immediately attend to the foregoing emergency. This work involved performing immediate remedial measures for two hours, for which Plaintiff received no pay.

58. In addition, Plaintiff dealt with boiler issues, which could arise at any time day or night.

59. Regardless of the time of day or night and/or day of the week when such work was needed, Plaintiff was paid a fixed weekly sum, which covered only the first forty hours of work.

60. Defendants did not provide Plaintiff with a method for keeping track of the hours worked.

61. Nor did Defendants provide any information to Plaintiff concerning which hours of on-call time and/or emergency work performed after hours were deemed hours

worked. Instead, Defendants simply provided Plaintiff no wages at all for such time spent handling unforeseen matters.

62. The work hours alleged herein are conservative estimates, as Plaintiff was on-call, and was regularly called upon to perform work, after hours.

63. Plaintiff was not paid overtime compensation despite working substantially more than 40 hours per work week in violation of the FLSA.

64. Defendants issued weekly checks to Plaintiff the gross amount of $500.00 per week. Plaintiff's weekly pay only covered the first forty hours of work per week. Consequently, Plaintiff was paid no compensation for at least twenty (20) of the hours he worked each week.

65. Plaintiff's rate of pay was below the New York City applicable minimum wage rate for large employers. Pursuant to NYLL § 652, the applicable minimum wage rate in 2020 was $15.00 per hour. However, Plaintiff was paid only $12.50 per hour ($500 ÷ 40) for the first forty hours of work, and no compensation for the extensive hours worked above the first forty per week.

66. Alternatively, if Plaintiff is adjudged to have been a resident janitor, Plaintiff's weekly wages of $500.00 were below the applicable per-unit rate provided by 12 NYCRR 141-1.2 and/or the minimum weekly wage rate of $638.00 provided by 12 NYCRR 141-2.8, the New York Minimum Wage Order for the Building Service Industry (the "Building Service Industry Wage Order").

67. Defendants' failure to pay Plaintiff the required amount of overtime pay and minimum wages was willful.

68. Notably, PMG was the subject of federal court proceedings brought on behalf of superintendents involving similar wage and hour violations, but PMG did not remedy its unlawful wage practices as to Plaintiff.

69. Plaintiff's wages were reduced by costs Plaintiff incurred because he was required to use his own tools to perform his duties, in violation of Section 141-1.9 of the Building Service Industry Wage Order.

70. When Plaintiff took time off from work, he was required to find someone to temporarily fill in for him at the Building. On these occasions, Plaintiff was required to pay the temporary replacement from his own pocket, without reimbursement.

71. Upon information and belief, Defendants were well aware that Plaintiff incurred the foregoing costs because Plaintiff called PMG's office when he needed time off, and he was instructed to find a temporary replacement.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***

72. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

73. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).

74. At all relevant times hereto, the Defendants employed Plaintiff as a superintendent, an employment position which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

75. At all times relevant hereto, the Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

76. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

77. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

78. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the New York Minimum Wage Act**

79. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

80. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

81. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

82. Based on Plaintiff's weekly wages of $500.00, Plaintiff was paid an effective hourly rate of $12.50 per hour.

83. Plaintiff was damaged in amounts to be determined at trial.

84. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### Violation of 12 NYCRR Sections 141-1.2 and/or 141-2.8
### Janitorial Minimum Wage

85. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

86. Alternatively, in the event that Plaintiff is adjudged to be a janitor under the Building Service Industry Wage Order, Defendants were required to pay Plaintiff a minimum wage of not less than $638.00 per week.

87. Based on Plaintiff's fixed weekly wage of $500.00 per week, Plaintiff wages fell below the minimum wage rate applicable to janitors.

## AS AND FOR A FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages

88. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

89. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

90. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

91. Defendants willfully failed to pay Plaintiff overtime at a rate of one-half his effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

92. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

93. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**

94. Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; number of overtime hours worked; and such other information as required by NYLL § 195(3).

96. Defendants failed to provide Plaintiff with wage statements setting forth the dates of work for which Plaintiff was being paid; the basis of his pay; and the address and telephone number of the employer(s).

97. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Illegal Deductions, 12 N.Y.C.R.R. §141-2.10(b)**

98. Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

99. In violation of the New York Labor Law, Article 19, § 193 and NYCRR 141-2.10(b) Defendants forced Plaintiff to incur unlawful reductions in his wages by having to spend his own money on work-related expenses, including tools of the trade to complete mandated work. This further reduced Plaintiff's wages below the amounts required by the NYLL and FLSA.

13

100. Plaintiff's wages were also unlawfully reduced by expenses he incurred to pay temporary replacements to fill in for him when he took time off.

101. As a result of the foregoing, Plaintiff seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, Jose Ferreira, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the FLSA and NYLL as to Plaintiff;

2. Awarding Plaintiff damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

3. Awarding statutory damages for Defendants' failure to provide Plaintiff with wage statements required by NYLL § 195(3);

4. Declaring that Defendants' violations of the FLSA and NYLL were willful;

5. For all other Orders, findings and determinations identified and sought in this Complaint;

6. For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

7. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

8. Such other relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
May 4, 2023

**RAPAPORT LAW FIRM, PLLC**

By:  /s/
_____
Marc A. Rapaport
80 Eighth Avenue, Suite 206
New York, NY 10011
(212) 382-1600
mrapaport@rapaportlaw.com

**MILLER LAW, PLLC**

 /s/
By: _____
Meredith R. Miller
167 Madison Avenue, Suite 503
New York, NY  10016
(347) 878-2587
**meredith@millerlaw.nyc**

*Attorneys for Plaintiff Jose Ferreira*